Ronald Kay CURSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 29790.

Court of Criminal Appeals of Texas.

May 21, 1958.

Musick, Musick & Heath by Robert H. Heath, Houston, for appellant.

Dan Walton, Dist. Atty., Thomas D. White and Gus Zgourides, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Presiding Judge.

The offense is unlawfully carrying arms; the punishment, a fine of $100.

Officers Jordy and Albrecht testified that on the day in question, as they were talking on the street in Houston, the appellant stopped his automobile near their motorcycles and asked Officer Jordy a question. Some conversation ensued, and the officers, who had approached the appellant's automobile in order to converse with him, observed a "night stick" or "police club" or "police stick" or "billy club" protruding from under the front seat and placed him under arrest for carrying the same.

Appellant, testifying in his own behalf, said that he was a collector for an insurance company and that he carried the night stick for his own protection since he sometimes carried large sums of money.

We shall discuss the contentions advanced by counsel in his brief.

The information was drawn in conformity with Section 570, Willson's Criminal Forms, 6th Ed., but alleged the arms to be "a night stick" as included in the 1957 amendment to Article 483, Vernon's Ann.P.C.

Appellant moved to quash the information because it failed to allege that the "night stick" was carried at night and requested the court in his charge to define "night stick" as the same is defined in Webster's Unabridged Dictionary as "a policeman's club carried by night." He argues from such definition that the carrying of such a prohibited weapon does not constitute an offense unless it is carried at night. We have concluded that the term "by night" found in the definition is descriptive of the type of weapon involved and does not limit the criminality of the act of carrying the same to any hour of the day.

He next contends that the amendment, Acts 1957, c. 340, supra, is unconstitutional because the term "night stick" is not expressed in the title or caption. The pertinent portion of the caption reads: "* * * making it unlawful to carry arms; enumerating the arms so prohibited * * *." Appellant relies upon the early case of English v. State, 35 Tex. 473, where the Supreme Court of this State held that the constitutional prohibition against the infringement of the people's rights to "keep and bear arms" was not violated by the passage of the act of which the present act is an amendment. The Court there construed the term "arms" in the Constitution as those designed for the military as distinguished from those enumerated in the statute. He argues from this reasoning that the terms "arms" in the caption of this act does not include a "night stick."

It should be borne in mind that the Court in English was not discussing the sufficiency of the title or caption. We do find that the general rule relating to the sufficiency of the caption is found in Volume 39, Texas Jurisprudence, page 93, section 43, as follows:

"A title is sufficient to authorize the inclusion in the body of the act of any provision within its scope when the 'main subject' or 'ultimate object' of the act is clearly, definitely, fairly and fully, expressed—that is expressed as well as can reasonably be expected in a brief and general statement."

His further contention that the act is unconstitutional because it contains more than one subject is overruled.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.

DAVIDSON, Judge (dissenting).

In 1957, the legislature amended Art. 483, P.C., touching the unlawful carrying of arms, to read as follows:

"Any person who shall carry on or about his person, saddle or in his saddlebags, or in his portfolio or purse any pistol, dirk, dagger, slung shot, blackjack, hand chain, night stick, pipe stick, sword cane, spear, knuckles made of any metal or any hard substance, bowie knife, switch blade knife, spring blade knife, throw blade knife, a knife with a blade over five and one half (5½) inches in length, or any other knife manufactured or sold for the purposes of offense or defense shall be punished by a fine of not less than One Hundred Dollars ($100) nor more than Five Hundred Dollars ($500) or by confinement in jail for not less than one (1) month nor more than one (1) year."

Appellant was convicted of a violation of that statute under an accusation that he did carry on or about his person a "night stick."

The trial court instructed the jury that appellant would be guilty if he carried on or about his person a "night stick."

The legislature made no effort to define the term "night stick," nor did the trial court do so in his charge to the jury.

The meaning of that term, then, is necessarily that commonly given thereto.

A reference to the earlier dictionaries reveals no definition for "night stick." A late edition defines the term as "a heavy stick or long club carried by a policeman at night, and sometimes in the daytime." Still another definition is given as "a policeman's club carried at night."

It is apparent from those definitions that in determining whether a stick is a night stick it must be shown that it was carried by or used by a policeman in the pursuance of his duties. Such requisite becomes and is descriptive of a night stick and must, of necessity, be established by the proof.

There is not a line of evidence, here, that the club which the state charged appellant with carrying met those requirements.

Appellant, according to the testimony, was an insurance "salesman-collector." He said he carried the stick for defense purposes in making collections, and that the stick was issued to him when he was in the Navy, thereby negativing the fact that the stick was used by or adaptable for use by a policeman.

The stick, club, or weapon—whatever it may be called—was offered in evidence upon the trial of the case. It is not included in the record before us. No description of the club appears in the statement of facts.

Appellant's trouble arose because he was unable to resist calling a policeman's attention to the running by the officer of an amber light (traffic signal), insisting that the officer had no more right to run an amber light than any other person, and that if he (the appellant) had done the same thing the officer would have given him a ticket. The policeman testified that he said to appellant:

"* * * the light was amber when I made my turn * * * I never wrote anyone a ticket for running an amber light."

It was during this conversation that the policeman saw a stick protruding from underneath the front seat of the automobile appellant was driving. The officer took charge of the stick.

It is for the carrying of the stick partially hidden in the automobile that appellant stands here convicted.

If the term "night stick" is not to be given or restricted to the definitions as above set out, wherein the term "policeman" is descriptive of the stick, then the

term is so vague and indefinite that the statute is thereby rendered invalid.

The correctness of that proposition is demonstrated by the testimony of the two policemen who were the state's witnesses, to the effect that the night stick which they took from appellant's automobile was, variously, a "police club," a "police stick," and a "billy club." It so happens that it is not unlawful to carry any or all of those different clubs. They are nowhere named in the statute. So if the "night stick" here involved was any one or all of the above-named objects, appellant violated no law in carrying it.

The burden was upon the state to show that the club found in appellant's car was unlawfully carried. This it wholly failed to do. To the contrary, the state has shown that it was lawful.

Ultimately, then, who is to say that a stick is a "night stick" within the meaning of Art. 483, Vernon's P.C.? Would it be the arresting officers, here? Apparently not, for they, themselves, did not profess to know, referring as they did to the stick found in appellant's car by several different names the carrying of which is not unlawful. If the stick were a "night stick," it was not a "police club," a "police stick," or a "billy club," because the last named sticks are not unlawful to carry.

This conviction and the approval thereof by a majority of this court gives to a peace officer upon seeing a broom handle, a hammer handle, a walking cane, a piece of two-by-four, or any other stick or club in one's automobile the right to arrest and carry him to jail because of what the peace officer said he saw in the car which he named as a "night stick," thereby establishing the guilt of the driver of the automobile in carrying therein a "night stick."

If the term "night stick" can not be described by the legislature in terms that any-one of ordinary understanding would know his carrying it on or about his person would be a violation of the law, then no one ought to be convicted therefor. If the legislature can define the term in reasonable language, it should do so.

Above and beyond all things else the courts ought not to let the individual peace officers define the term.

Appellant insists that the caption to the amendment to Art. 483, Vernon's P.C., in 1957, is not sufficient to give notice of proposed legislation to make unlawful the carrying of a night stick.

The caption reads as follows:

"An Act amending Article 483, Chapter 4, Revised Penal Code of the State of Texas, 1925, as amended by Acts, 1951, of the Fifty-second Legislature, making it unlawful to carry arms; enumerating the arms so prohibited; providing a penalty therefor; and declaring an emergency." Acts 1957, c. 340.

It will be noted that the specific notice there given as to the proposed legislation was to amend the existing statute to make "it unlawful to carry arms; enumerating the arms so prohibited."

The question arises as to the meaning of the words "enumerating the arms so prohibited," as contained in the caption. Is the effect of those words to limit the amendment to the arms which are enumerated in the act—and, if so, what does the word "arms" contemplate? Does a night stick come within the term "arms"?

I do not care to enter into a discussion of that question, but I will call attention to the fact that by the provision of the statute it is made unlawful not only for one to carry on or about his person a "night stick" but also "a knife with a blade over five and one half (5½) inches in length." So the housewife's favorite butcher knife and her kitchen knives and dinner knives which have a blade exceeding five and a half inches in length have now been outlawed and the carrying of which made unlawful, because such knives constitute

"arms". The next time the family basket is packed for a picnic there had best be no kitchen knife, dinner knife, or butcher knife therein, for some peace officer might find it in the basket in the car; if he did, his duty would be to arrest the driver of the car for carrying arms.

What I have said is in no sense facetious or said in levity, but is said to seriously call attention to this regimentation of the citizens of this state and to the power of legislation given to peace officers to determine not only when a law is violated but what the law is that is violated.

I respectfully dissent.