Steven Earl HILL *v.* STATE of Arkansas

CA CR 98-26                                           977 S.W.2d 234

Court of Appeals of Arkansas
Division I
Opinion delivered November 4, 1998

*John H. Bradley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly S. Terry*, Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. A jury convicted Steven Earl Hill of second-degree murder in connection with the starvation death of his four-year-old daughter Krystal Hill. Appellant was sentenced to eighteen years' imprisonment in the Arkansas Department of Correction. For reversal of his conviction, appellant raises four points on appeal. Based upon our review of the record of the trial proceedings, we conclude that no errors were committed and affirm his conviction.

We address appellant's arguments in the order they are presented in his brief. At trial, the prosecutor cried while making

his closing argument. The appellant objected and moved for a mistrial, arguing that the prosecutor's actions were an improper appeal to the jurors' passions. The trial court denied the motion for a mistrial, and admonished the jury to disregard the prosecutor's display of emotion, and to consider only the evidence in determining appellant's guilt or innocence. Appellant now contends that the trial court should have granted his motion for a mistrial.

A mistrial is an exceptional remedy to be used only when possible prejudice cannot be removed by an admonition to the jury. *Gray v. State*, 327 Ark. 113, 937 S.W. 2d 639 (1997). A mistrial should only be declared when an admonition to the jury would be ineffective. *Puckett v. State*, 324 Ark. 81, 918 S.W. 2d 707 (1996). The trial court is given broad discretion to control counsel in closing arguments, and the appellate courts will not disturb the trial court's decision absent an abuse of discretion. *Lee v. State*, 326 Ark. 529, 932 S.W. 2d 756 (1996). Remarks that require a reversal are rare and require an appeal to the jurors' passions. *Id.* Moreover, not every instance of prosecutorial misconduct mandates a mistrial. *Muldrew v. State*, 331 Ark. 519, 963 S.W. 2d 580 (1998).

Although the propriety of a prosecutor crying during a closing argument has yet to be addressed by our courts, other jurisdictions have addressed this precise issue. In *Coburn v. State*, 461 N.E.2d 1154 (Ind. App. 2 Dist. 1984), the Indiana Court of Appeals held that the trial court had not abused its discretion in refusing to grant a mistrial where the prosecutor cried during defense counsel's closing argument. The court reasoned that where the effect of or impact of the unrecorded conduct is not and cannot realistically be reported in a written record, deference should be given to the discretion of the trial judge who was on the scene and in the best position to evaluate the conduct, its propriety, its inadvertence, and its impact, if any, on the jury. Similarly, in *Gibbons v. State*, 495 S.E. 2d 46 (Ga. App. 1997), the court did not find error in the trial judge's refusal to grant a mistrial where the prosecutor, the victim and her mother, and other witnesses cried during closing arguments. The decision was based upon the

fact that the record did not show that their actions disrupted the court or otherwise affected the jury.

■ Here, the fact that the prosecutor cried does not, in itself, amount to an improper appeal to the passions of the jurors. In fact, appellant has not included in his abstract proof that any of the jurors were visibly affected by the prosecutor's emotional display. Further, though shedding tears, the prosecutor urged the jury to look at the evidence and not to allow their emotions to factor into their decision regarding appellant's fate. Moreover, the trial court admonished the jury to disregard the prosecutor's emotional display. Based upon the facts presented in the record on appeal, we conclude that although the prosecutor's emotional display may have been improper, it was not an appeal to the jurors' passions that would require the granting of the motion for a mistrial.

Although appellant does not challenge the sufficiency of the evidence to convict, a brief recitation of the facts is necessary. On April 17, 1996, the Blytheville Police received a 911 call and were dispatched to appellant's residence. Police officers arrived at the residence to find Krystal Hill dead on the floor of one of the residence's bedrooms. An autopsy was performed and the medical examiner determined that the cause of Krystal's death was kidney failure due to malnutrition and neglect, exacerbated by physical abuse.

On October 31, 1996, appellant and his wife, Ida Hill, who was Krystal's stepmother, were charged by information with first-degree murder. Prior to trial, appellant moved to sever his trial from his co-defendant's. The trial court denied the motion. During the course of the trial, appellant moved for severance on several different occasions. The trial court denied all but one of the motions. Severance was finally granted when appellant gave testimony that implied that his wife caused Krystal's death.

■ ■ Appellant raises as a point of error the trial court's refusal to grant his motion for severance prior to trial. It is well settled that trial courts have discretion to grant or deny a severance, and on appeal we will not disturb the ruling in the absence of an abuse of that discretion. *Cox v. State*, 305 Ark. 244, 808

S.W. 2d 306 (1991). In determining whether to grant a severance, a trial court should weigh the following factors: (1) whether the defenses of the defendants are antagonistic; (2) whether it is difficult to segregate the evidence; (3) whether there is a lack of substantial evidence implicating one defendant except for the accusation of the other defendant; (4) whether one defendant could have deprived the other of all peremptory challenges; (5) whether one defendant will be compelled to testify if the other does so; (6) whether one defendant has no prior criminal record and the other has; and (7) whether circumstantial evidence against one defendant appears stronger than against the other. *Echols v. State*, 326 Ark. 917, 936 S.W. 2d 509 (1996). The presence of any one of the factors does not necessarily require severance, as there are multiple factors to consider. *Rockett v. State*, 319 Ark. 335, 891 S.W. 2d 366 (1995).

██ Appellant argues that the trial court erred in refusing to grant his pretrial motion for severance, because the nature of the charges indicated that they would present antagonistic defenses. We disagree. At the time the trial court denied the motion, there simply was no evidence that the defendants would present antagonistic defenses. In statements given to the authorities during the course of the investigation of Krystal's death, each of the defendants gave testimony that tended to absolve the other of wrongdoing. For instance, appellant's wife gave a statement that appellant was a good father who loved his children, and that he did not harm his children. Appellant's statement to authorities indicated that he believed his wife did a good job of caring for the children, and that she would not harm the children. There clearly was no evidence that the defendants would present antagonistic defenses until appellant testified and implicated his co-defendant in Krystal's death.

██ The State points out that antagonistic defenses arise when each defendant asserts his innocence and accuses the other of the crime, and the evidence cannot be successfully segregated. *Cooper v. State*, 324 Ark. 135, 919 S.W. 2d 205 (1996). However, our courts have held that when there is no reason the jury could not have believed both defenses, the defenses are not antagonistic. *Echols, supra.* In the present case, prior to trial, both defendants

maintained their innocence in causing Krystal's death. Both defendants stated that neither had caused the child harm, and that she had been fed. The only evidence tending to implicate one defendant and not the other was introduced in the testimony of the appellant, after the State had rested its case.

█ Appellant argues that there was difficulty in segregating the evidence. He argues that his co-defendant's taped statement that she did not cause Krystal's death, although admitted as a statement against her own interest, accused him by implication of causing Krystal's death. However, because both maintained their innocence at the time the motion was denied and neither accused the other, we cannot find that there was difficulty in segregating the evidence. Although there are other factors that are to be weighed in making the decision to sever, appellant does not argue that any of those factors were present. We accordingly decline to address those factors.

██ █ Appellant also contends that the trial court erred in admitting the taped statement made by Ida Hill. According to appellant, the introduction of the taped confession of his co-defendant who did not testify at a joint trial violated his rights under the Sixth Amendment's Confrontation Clause. It is well settled that where two or more defendants are tried jointly, the pretrial confession of one that implicates the other is not admissible against the other unless the confessing defendant waives his Fifth Amendment rights so as to permit cross examination. *Moore v. State*, 297 Ark. 296, 761 S.W. 2d 894 (1988). Ida Hill's statement did not contain a confession. In fact, Ms. Hill's statement tended to clear appellant of any wrongdoing. In her statement, Ms. Hill stated that appellant never abused Krystal, that he fed her, and that he was a loving father. In the absence of a confession by his co-defendant, we cannot conclude that a violation of appellant's rights granted under the Sixth Amendment's Confrontation Clause occurred.

██ █ Appellant also argues that Ida Hill's statement was hearsay as to him, and should not have been admitted. Hearsay is any statement made by an out-of-court declarant that is repeated in court and is offered into evidence for the truth of the matter

asserted. *See Bragg v. State*, 328 Ark. 613, 946 S.W. 2d 654 (1997). Hearsay evidence is generally inadmissible, except as provided by law or the rules of evidence. *Id.* Even if we were to decide that Ms. Hill's statement is hearsay, the statement tended to exculpate, rather than inculpate, appellant. Moreover, appellant has failed to demonstrate that he was prejudiced by the trial court's ruling. Our appellate courts do not reverse a trial court's ruling regarding such evidentiary matters, absent a demonstration of prejudice. *See Misskelley v. State*, 323 Ark. 449, 915 S.W. 2d 702 (1996).

Appellant's final argument is that the trial court erred in denying his motion to suppress items seized pursuant to a search warrant that he characterizes as defective due to an excessively broad affidavit. Specifically, appellant argues that the warrant was defective because it did not describe with particularity the things to be seized.

■ In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances, and we reverse only if the ruling is clearly against the preponderance of the evidence. *State v. Blevins*, 304 Ark. 388, 802 S.W. 2d 465 (1991).

The requirements for the contents of search warrants are found in Rule 13.2(b) of the Arkansas Rules of Criminal Procedure, which provides in part that, "[t]he warrant shall state, or describe with particularity . . . the location and designation of the places to be searched[.]" Rule 16.2(e) provides that "[a] motion to suppress evidence shall be granted only if the court finds that the violation upon which it is based was substantial, or if otherwise required by the Constitution of the United States or of this state."

Blytheville Police Captain James Sanders testified that after being informed by the medical examiner that Krystal's death was ruled a homicide that resulted from starvation and dehydration, he prepared an affidavit for a warrant to search appellant's home. The medical examiner also noted that there were approximately one hundred scars found on Krystal's body. In the affidavit for the search warrant, Captain Sanders wrote that a four-year-old child

had died in appellant's home, that the medical examiner had ruled the death a homicide, and that the cause of the death was starvation and dehydration. Captain Sanders wrote in the affidavit that he believed that there was currently being concealed in the home certain property, namely evidence of child abuse and neglect, abusive punishment, starvation, and visual observations of adverse child living conditions.

Captain Sanders presented the application for the search warrant to Blytheville Municipal Judge Max Harrison. After reading the affidavit, Judge Harrison asked Captain Sanders to inform him of the items the police were specifically looking for. Judge Harrison placed Captain Sanders under oath, and Captain Sanders informed the judge that the police were looking for extension cords, bent coat hangers, and metal fly swatters, based upon the medical examiner's opinion that the injuries found on Krystal's body could have been inflicted by those items. Judge Harrison then had an addendum typed on the bottom of the affidavit that included among the items to be seized bent coat hangers, metal fly swatters, extension cords, and drug paraphernalia.

▇▇ ▇▇ Appellant contends that because the warrant did not state that the items added to the affidavit were to be seized, those items along with photographs taken of his home should not have been allowed into evidence. The supreme court has previously held that highly technical attacks on search warrants are not favored, as such attacks would only serve to discourage police officers from obtaining them. *Norman v. State*, 326 Ark. 210, 931 S.W. 2d 96 (1996). In *Vanderpool v. State*, 276 Ark. 220, 633 S.W. 2d 374 (1982), the supreme court reasoned that if a magistrate determines that an affidavit is insufficient the defect can be cured, if the affiant has the required good cause, by putting the affiant under oath and allowing him to testify or by allowing him to execute a supplemental affidavit under oath. The supreme court has also upheld the validity of a search warrant where, although the language in the warrant was vague, the affidavit attached to the warrant described the location to be searched with particularity. *See Baxter v. State*, 262 Ark. 303, 556 S.W. 2d 428 (1977).

█ Here, where the magistrate administered an oath to the officer and attached an addendum that stated with particularity the items to be seized, we cannot say that the trial court's decision to deny the motion to suppress was against the preponderance of the evidence.

Affirmed.

AREY and ROAF, JJ., agree.